IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**JAIME MARQUEZ**, et al.,

      Plaintiff,

vs.                                                      Civ. No. 09-838 MCA/WDS

**AIG AMERICAN INTERNATIONAL**

**COMPANIES**, et al,

      Defendants.

## MEMORANDUM OPINION AND ORDER

This matter is before the Court upon *Plaintiffs' Motion To Remand*. [Doc 7] Having considered the parties' submissions, the relevant law, and otherwise being fully advised in the premises, this Court grants the motion.

### I.    PROCEDURAL BACKGROUND

This case arises from an automobile accident, which happened in 2005. Rudy Mosley was driving northbound on I-25, in Doña Ana County, when he was hit from behind by a commercial garbage truck, which was owned by Transit Waste, LLC and was driven by John Gross. Mosley's vehicle was propelled into a trailer, which was driven by Ronald McCullough. Mosley was killed in the accident. The garbage truck had been recently repaired in El Paso by McNeilus Companies, Inc., (McNeilus) who had hired Truck Connections International, Inc. (TCI) to provide a driver to take the garbage truck from El Paso to Bloomfield, New Mexico. TCI hired Gross to drive the vehicle.

In September 2006, Plaintiffs, who include Mosley's family members, McCullough, and the owner of the trailer that he was driving, Lima Transport, LLC, filed suit in the First Judicial District for wrongful death against Transit Waste, McNeilus, and TCI.  After the state court ordered the suit to mediation, the parties entered into a settlement.  On December 28, 2008, the state court entered a stipulated judgment of liability and damages, as well as a covenant not to enforce the judgment.  Transit Waste and McNeilus assigned their rights against their respective insurance companies to Plaintiffs.

On the same day, Plaintiffs filed an amended complaint (Third Amended Complaint) against the insurance companies.  Transit Waste carried a liability policy with American Home Assurance Company (AHAC) and with American International Speciality Lines Insurance Company (AISL).  McNeilus was covered by Scottsdale Insurance Company (Scottsdale) and by Gulf Underwriters Insurance Company (Gulf).  The previous defendants were at that point no longer named parties.  The state court granted summary judgment to Scottsdale on July 30, 2009, granted summary judgment to AISL on August 12, 2009, and entered a stipulated order of dismissal as to Gulf on August 21, 2009.  The remaining defendant, AHAC, (Defendant) filed a notice of removal to this Court on August 31, 2009. [Doc 1] Plaintiffs responded to removal with a motion to remand.  [Doc 7]

**II.     ANALYSIS**

Pursuant to 28 U.S.C. § 1332 (2005), "district courts have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000 . . . and is between . . . citizens of different States . . . ." 28 U.S.C. § 1332(a).  An action initially

brought in a state court may be removed to a federal district court pursuant to the authority set forth in 28 U.S.C. § 1441 (2002), which states that

> [e]xcept as otherwise expressly provided by Act of Congress, any civil action brought in a State Court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district Court of the United States for the district and division embracing the place where such action is pending.

28 U.S.C. § 1441(a). Removal statutes are strictly construed against removal in order to prevent encroachment on the jurisdiction of state courts, to preserve comity, and to protect a plaintiff's right to fair treatment. See Shamrock Oil & Gas Corp. v. Sheets, 313 U.S. 100, 108 (1941). Further, the removal of civil cases to federal court may infringe on state sovereignty. See id. at 108-109. All doubts must be resolved against removal and in favor of remand. See Martin v. Franklin Capital Corp., 251 F.3d 1284, 1289-90 (10th Cir. 2001); Fajen v. Found. Reserve Ins. Co., 683 F.2d 331, 333 (10th Cir. 1992).

Plaintiffs contend that this case should be remanded to state court for three reasons: Defendant improperly petitioned for removal more than a year after the commencement of the action, contrary to 28 U.S.C. § 1446(b) (1996); [Doc 8 at 2] the parties are not completely diverse; [Id. at 5] and the removal petition is procedurally defective, based on Defendant's failure to secure the consent of all defendants. [Id. at 7]

**A.     Timeliness of Removal**

28 U.S.C. § 1446(b) instructs that

> [i]f the case stated by the initial pleading is not removable, a notice of removal may be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable, except that a case may not be removed on the basis of jurisdiction conferred by section 1332 of this title more than 1 year after commencement of the action.

There is no question that Defendant filed its notice of removal within thirty days of its determination that the case was removable. Defendant filed its notice on August 31, 2009, which was thirty days after receiving notice that Scottsdale, a nondiverse defendant, had been granted summary judgment. Thus, the parties contest only whether the case was improperly removed "more than 1 year after commencement of the action."

Plaintiffs contend that the action commenced on September 6, 2006, when the original complaint was filed, and therefore, if Section 1446(b) is read and applied in a literal fashion, removal is barred because more than one year passed since the commencement of the action. Defendant makes several arguments in response, but its position is essentially that the one-year period did not begin to run until the filing of the Third Amended Complaint. It points out that the procedural correctness of removal is not jurisdictional and argues that as a result, equitable exceptions to the one-year rule should apply. Defendant further contends that under Fed. R. Civ. 15(c), the Third Amended Complaint does not relate back to the original complaint and that remand to state court would not serve the purpose of the one-year rule.

With respect to Defendant's equitable argument, this Court is unable to discern a consensus among the various jurisdictions as to whether equitable exceptions apply to

Section 1446(b). The Fifth Circuit Court of Appeals has adopted an equitable approach, stating that "Section 1446(b) is not inflexible, and the conduct of the parties may affect whether it is equitable to strictly apply the one-year limit." Tedford v. Warner-Lambert Co., 327 F.3d 423, 426 (5th Cir. 2003). In Tedford, the Court concluded that the plaintiff had engaged in forum manipulation. Id. at 427. Under these circumstances, the Court was concerned that "[s]trict application of the one-year limit would encourage plaintiffs to join nondiverse defendants for 366 days simply to avoid federal court, thereby undermining the very purpose of diversity jurisdiction." Id. Similarly, in Saunders v. Wire Rope Co., 777 F.Supp. 1281 (E.D. Va. 1991), the court held that Section 1446(b) should not be read so strictly as to prevent a defendant who was not served with the original complaint from removing the action less than a year from the service of an amended complaint. Id., at 1282, 1283-84. The Saunders court relied in part on the fact that the defendant had no notice or opportunity to respond to the plaintiff's complaint until the complaint was amended and served. Id. at 1283; see e.g. Namey v. Malcom, 534 F.Supp.2d 494, 498 (M.D. Pa. 2008) (acknowledging that an equitable exception could apply to untimely removals); Rauch v. Rauch, 446 F.Supp.2d 432, 436 (D. S.C. 2005) ("[T]he court finds that the statutory limitation of § 1446(b) is not jurisdictional, and thus may be waived in the favor of equity where the plaintiff has acted improperly to prevent removal.").

Other courts have differed as to the approach taken with respect to Section 1446(b). For example, the district court for the Northern District of Oklahoma strictly interpreted Section 1446(b) and concluded that "[t]he one-year limitation should be strictly interpreted

and enforced." Caudill v. Ford Motor Co., 271 F.Supp.2d 1324, 1327 (N.D.Okla. 2003). The court there acknowledged that this interpretation of the rule can invite abuses by plaintiffs, but "it is for the Congress and not [the court] to rewrite the provisions of section 1446(b) to curb such abuses." Id. (internal quotation marks and citation omitted); see also Jones Mgmt. Servs., LLC v. KES, Inc., 269 F.Supp.2d 892, 894 (E.D. Tenn. 2003) ("Any attempt to read into the statute an "equitable" exception amounts to judicial legerdemain."); Medley v. Rag Am. Coal, No. 05-CV-353, 2005 WL 2401867, *2 (D.Utah Sept. 28, 2005) (rejecting an equitable exception to Section 1446(b)).

Our Tenth Circuit has held that defects in the removal procedure are not jurisdictional. See Setzer v. Farmers Ins. Co., Inc., 185 Fed.Appx. 748, 752 (10th Cir. 2006) (concluding that the plaintiff's argument relating the one-year rule was required to have been preserved because it was not a "jurisdictional defect"); but see Bowles v. Russell, 551 U.S. 205, 210-11 (2007) (concluding that statutory time limitations, as opposed to court-imposed rules, strictly control the subject matter jurisdiction of lower federal courts). Thus, despite conflicting law on the specific issue of equitable exceptions to the one-year rule, this Court may apply an equitable exception if the facts warrant such treatment. See Bowles, 551 U.S. at 214 (differentiating truly jurisdictional rules from nonjurisdictional claims-processing rules which may be forfeited or subject to equitable exceptions). The Court finds that the present circumstances do not justify equitable relief.

Defendant contends that diversity jurisdiction should lie with this Court because the Third Amended Complaint is "factually and legally unrelated to the original Complaint," that

"[i]t therefore changed the character of the litigation so as to make it substantially a new suit," and that as a result, the one-year period mandated by Section 1446(b) should not run until one year after the filing of the Third Amended Complaint. [Doc 14 at 4, 5] Defendant relies primarily on Johnson v. Heublein, Inc., 982 F.Supp. 438 (S.D. Miss. 1998), for support. Johnson, however, is factually distinguishable.

In Johnson, the Johnsons made a series of loans to a company and received in return a promissory note and a security interest in specific equipment, including an evaporator. Id. at 439. In a separate transaction, the company entered into an agreement with Heublein for construction of the evaporator, and as part of that agreement, the company also granted Heublein a security interest in the evaporator. Id. at 339-40. The Johnsons eventually sued the company and Heublein, among others. Id. at 440. After some time, the company, another defendant, and the Johnsons entered an agreement titled "Confession of Judgment and Assignment of Claims," which "confessed judgment in favor of the Johnsons" and "also assigned to the Johnsons any and all claims which they might have against Heublein" and other defendants. Id. at 441. In return, the Johnsons promised not to execute the judgment against the company. Id. at 442.

Subsequently, the company and the Johnsons, together at that point as plaintiffs, filed an amended complaint against Heublein and the other defendants. Id. After receiving the amended complaint, Heublein removed the matter to federal court. Id. The original claims by the Johnsons against the company and Heublein were for conversion of the evaporator and default on the promissory note and security agreements. Id. at 440. The amended complaint

alleges breaches of contract between Heublein and the company, and generically "re-alleg[ed] and incorporat[ed] by reference all allegations made in the original Complaint . . . ." Id. at 442.  In response to the Johnsons' motion to remand, Heublein argued that the amended complaint was the "initial" pleading in the matter, which triggered the thirty day limit and a new one-year limit.  Id. at 443, 444.  The district court agreed, concluding that the amended complaint "states an entirely new cause of action as compared with the Original Complaint filed . . . ."  Id. at 443.  The court found that the allegations in the amended complaint "bear no resemblance whatsoever to the allegations in the Original Complaint" and that the parties were aligned in the opposite manner than was originally the case.  Id. at 444.

In the present case there has been no realignment of parties and the Third Amended Complaint is not so far removed from the original complaint as to "bear no resemblance whatsoever" to the original complaint.  Id. at 444.  Plaintiffs have added new defendants in order to reflect the continued pursuit of recovery for the same injuries that the original complaint encompassed.  The legal theories are different—reflecting the different defendants—but they stem from the same thread of legal logic.  That an insurer could be liable for the actions of its insured, which is currently the question in the amended complaint, is not the dramatic departure that the new plaintiffs in Johnson attempted with their amended complaint.  In Johnson, the original cause of action for conversion and default of a promissory note between one set of parties shared no common facts with the amended complaint for breach of contract between a different set of parties.  The Johnson plaintiffs were not seeking redress for the same injury.

In addition to Johnson, Defendant here cites a series of cases relating to statutes of limitation and whether amended complaints "relate back" to original complaints under Rule 15(c). [Doc 14 at 4] These authorities, however, do not establish a connection between Rule 15(c)'s requirements and Section 1446(b) and provide no persuasive authority to support such a link. Further, Defendant's citation to Braud v. Transport Serv. Co. of Il., 445 F.3d 801 (5th Cir. 2006), is unavailing. In Braud, the Fifth Circuit Court of Appeals stated the following:

> [A]lthough an amendment of the complaint will not revive the period for removal if a state court case previously was removable but the defendant failed to exercise his right to do so, a different result generally is reached if the pleading amendment provides (1) a new basis for removal or (2) changes the character of the litigation so as to make it substantially a new suit.

Id. at 806 (internal quotation marks and citation omitted). Although this quotation appears to support Defendant's position, the question before the Braud Court was whether removal in that case was permitted by the Class Action Fairness Act (CAFA). Id. at 802-03. Specifically, the Court interpreted CAFA in order to determine whether a suit that had "commenced" before the addition of a diverse defendant would "commence" again after the diverse defendant was added. Id. at 802. The Court in Braud carefully noted that CAFA, unlike Section 1446(b), does not contain the one-year restriction that is the subject of the current dispute. Id. at 805-06. Thus, Braud did not consider the application of the one-year rule, and its analysis does not aid the Court's current endeavor.

Defendant also argues that the purpose of the one-year rule is not served by its

application in the present case. The purpose for the one year rule is succinctly stated by the district court for the Western District of Oklahoma in <u>Anderson v. Ford Motor Co.</u>:

> By imposing a time limitation on removal in certain cases, Congress intended to prevent the disruption that occurs in state courts when cases are removed after substantial progress had been made. According to the legislative history, [t]he amendment addresses problems that arise from a change of parties as an action progresses toward trial in state court. These problems include disruption and substantial delay. It appears, therefore, that in imposing the one-year time restriction Congress was concerned about: 1) preserving comity between the state and federal courts; 2) the costs borne by litigants due to the delay caused by removal; and 3) the efficient administration of justice.

<u>Id.</u>, 303 F.Supp.2d 1253, 1257 (W.D. Okla. 2004) (alteration in original) (internal quotation marks and citations omitted). In the present case Defendant contends, without explanation, that there has been no progress in state court. [Doc 14 at 6] However, such a contention disregards aspects of the procedural history of the case since September 2006, when it was originally filed in state court. And considering only the period since the filing of the Third Amended Complaint, the case has been litigated to the extent that one other party, Scottsdale, was dismissed on the merits. Defendant's apparent choice not to pursue a similar dismissal, or its failure to obtain a similar dismissal, does not indicate that no progress has been made in the state court proceeding.

Defendant further suggests that no delay is attributable to removal because it removed the case as soon as it discovered the diversity of the remaining parties, and in so doing, it punts the matter back to Plaintiffs, suggesting that "if Plaintiffs were concerned with litigating the case completely and expeditiously, they could easily have amended their

complaint to name AHAC as a defendant when they concluded they might have causes of action against AHAC—well more than three years ago." [Doc 14 at 7]  Absent bad faith, the parties' tactical decisions to this point have no bearing on the analysis.  There exist numerous reasons for not amending earlier, and there exist several reasons to explain why Defendant did not intervene at an earlier time to request declaratory action on its obligations or to defend its insured.

Although the removal procedure is undoubtedly an important tool, defendants are not entitled to remove every case to federal court.  See Osborn v. Haley, 549 U.S. 225, 243 (2007) (identifying the ordinary circumstances that justify removal as wither complete diversity of citizenship or the existence of a federal question); Caterpillar Inc. v. Lewis, 519 U.S. 61, 69 (1996) (recognizing that remand is appropriate within 30 days of removal if the removal procedure was defective); Walker v. Armico Steel Corp., 446 U.S. 740, 753 (1980) (describing diversity of citizenship as "fortuity").  Indeed, in the present case, the circumstances that led Defendant to remove in August 2009 were happenstance—a nondiverse defendant was dismissed from the case by a grant of summary judgment, thereby creating complete diversity.  Had the summary judgment ruling occurred a few months later, i.e. a year after the Third Amended Complaint was filed, there would have been no arguable opportunity for removal.  Additionally, had Plaintiffs included Defendant in the original complaint that was filed in 2006, Defendant likewise would not have been able to remove the action to this Court in 2009 when the parties achieved complete diversity.

Defendant contends that if Section 1446(b) is read to bar removal, "it would have

been impossible for [it] to remove the case." [Doc 14 at 9]  A strict reading and application of Section 1446(b) limits the utility of removal based on diversity jurisdiction.  This, however, was not an unforeseen consequence of the one-year rule.  The Commentary which accompanies the 1988 revision to Section 1446(b), specifically the one-year rule, states as follows:

> It may be expected that the lineup of the parties in the state court action has become a permanent one by the time a year has gone by.  But that will not always be so, and the result in a given case is made to depend on the procedural variations—and perhaps the procedural eccentricities—of the particular state's practice.  The amendment may sometimes give too much control to the state court plaintiff who wants to resist a removal to the federal court at all costs.  It can invite tactical chicanery.
>
> A plaintiff with the motive of defeating removal, for example, may be able to join as a defendant, in a case in which there is genuine diversity between the plaintiff and the other defendants, someone of nondiverse citizenship whom the plaintiff does not really intend to sue but who is arguably liable on the claim and hence properly joined under state law.  The plaintiff can then just wait a year and drop that party, polishing the action to just the point desired and at the same time dissolving the threat of federal jurisdiction.
>
> The one-year cutoff therefore has an anti-diversity ring to it. Congress acknowledged this, but called it a 'modest curtailment.'

In the present case, Defendant has suggested that Plaintiffs have manipulated the state court forum by filing in Santa Fe County, rather than in Doña Ana County, where the accident happened and where most of the plaintiffs reside.  I am not persuaded that filing in a potentially advantageous state district court, pursuant to the local rules, is the same type of forum manipulation with which the Fifth Circuit Court of Appeals was concerned in Tedford.  In that case, the plaintiff sued multiple defendants, including a physician, who was the only

nondiverse defendant. See Tedford, 327 F.3d at 424-25. On a motion from one of the defendants, the state court severed the claim against the physician, which was apparently unrelated to the other claims. Id. at 425. The remaining defendant notified the plaintiff that it intended to remove the case, and within hours, the plaintiff joined another nondiverse physician. Id. The defendant removed anyway and argued that the physician had been fraudulently joined. Id. The district court disagreed and remanded. Id. The proceedings continued in state court, and before the expiration of the one-year period, the plaintiff signed a notice of nonsuit against the physician defendant—but failed to notify the remaining defendant until after the year marker had passed. Id. The remaining defendant again removed and argued that an equitable exception should apply to permit removal, and the district court, as well as the Fifth Circuit Court of Appeals, agreed. Id. at 424.

In Tedford, the plaintiff took an action that would have permitted the defendant to remove, nonsuiting the nondiverse defendant, but withheld that information from the remaining defendant. In the present case, there is no indication of such tactics or maneuvering by Plaintiffs in order to avoid litigation in federal court. Defendant points to no conduct by the Plaintiffs that would demonstrate any specific action on their part to prevent removal. The only action taken was to amend the complaint, rather than bring a new cause of action. Defendant fails to demonstrate how this is improper, or how this conduct rises to the level of the Tedford plaintiff, who withheld information from the defendant or the Johnson plaintiffs, who recruited a defendant to become a plaintiff and usurped that former defendant's separate and unrelated causes of action against the remaining defendants.

Under the circumstances of the present case, (1) where there is no evidence of fraudulent joinder to defeat diversity, (2) where the amended complaint continues the same quest for relief for the same injury, (3) where Defendant knew that its insureds were involved in this action at least three years before the complaint was amended, (4) where a nondiverse defendant was dismissed by summary judgment and not voluntarily by Plaintiffs, and (5) where the case has been progressing through state court since September 2006, this Court finds that no equitable exception to the one-year rule applies to permit removal. As noted earlier, removal statutes are to be strictly construed, and where there are doubts about removal, they should be resolved in favor of remand. See Brady v. Lovelace Health Plan, 504 F.Supp.2d 1170, 1173 (D. N.M. 2007) (asserting that Section 1446 must be construed strictly and "[a]ll doubts must be resolved in favor of remand"). Because this Court determines that this matter will be remanded based on Section 1446(b), the Court does not deem it necessary to reach Plaintiffs' remaining argument. Accordingly, this matter is remanded.

**B.     Fees and Costs**

Plaintiffs have requested an award of the fees and costs that stem from the litigation of this motion. The critical issue in deciding whether to award fees and costs is the propriety of the removal. Daleske v. Fairfield Cmtys., 17 F.3d 321, 324 (10th Cir. 1994). A finding of bad faith is not a prerequisite to an award of fees and costs; however, the mere fact that removal was improper does not automatically support such an award. See Excell, Inc. v. Sterling Boiler & Mechanical, Inc., 106 F.3d 318, 322 (10th Cir. 1997); Valdes v. Wal-Mart

Stores, Inc., 199 F.3d 290, 292 (5th Cir. 2000).  Here, where removal presented a close and difficult call, the Court elects, in the exercise of its discretion, to deny the request for fees and costs.

### III.   CONCLUSION

**IT IS THEREFORE HEREBY ORDERED** that for the foregoing reasons, *Plaintiffs' Motion To Remand* [Doc 7] is **GRANTED**.

**IT IS FURTHER ORDERED** that this action is hereby remanded to the First Judicial District for the County of Santa Fe, State of New Mexico pursuant to 28 U.S.C. Section 1446(b), and each party is to bear its own costs and attorney fees.

**SO ORDERED** this 15th day of March, 2010, in Albuquerque, New Mexico.

_____
**M. CHRISTINA ARMIJO**
**United States District Judge**